IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA P. BRAITHWAITE,

Plaintiff,

v.

OPINION and ORDER

22-cv-646-wmc

JOHN KIND and JAY VAN LANEN

Defendants.

---

Plaintiff Joshua Braithwaite, who is representing himself, claims that security staff at Green Bay Correctional Institution ("GBCI") violated his Eighth Amendment rights by placing him in administrative confinement and transferring him to a different prison despite knowing those transfers would exacerbate his mental health problems. Before the court are the parties' cross-motions for summary judgment. (Dkt. #37 and Dkt. #43.) Because no reasonable jury could find that either defendant violated Braithwaite's Eighth Amendment rights, plaintiff's motion will be denied and defendants' motion will be granted.

## UNDISPUTED FACTS

### A. Braithwaite's Transfer to GBCI

From February 2015 to October 2016, Braithwaite was housed at Waupun Correctional Institution, where he received numerous conduct reports for sexual conduct, threats, possession/manufacture/use of weapons, and assault of an employee and other inmates. On October 3, 2016, Braithwaite was transferred to GBCI, where he was placed in its Restrictive Housing Unit ("RHU") to complete a segregation term he had begun serving at Waupun.

Approximately three weeks after arriving at GBCI, Braithwaite was released from segregation into the general population. GBCI's Security Director, defendant John Kind, and Security Captain, defendant Jay Van Lanen, then met with Braithwaite to discuss his future at GBCI, including Braithwaite's programming, education and other goals. Defendants Kind and Van Lanen generally hold such conversations with inmates transferred to GBCI with problematic backgrounds and a history of significant discipline to determine if further security and safety precautions are necessary. Braithwaite told Kind and Van Lanen that he was interested in a fresh start and future programming. Kind responded that if Braithwaite did not stay out of trouble, he would be recommended for "administrative confinement" status. Administrative confinement involves an involuntary, non-punitive, segregated confinement of inmates whose presence in general population is considered a serious threat to life, property, self, staff, other inmates, or to the institution's secure or orderly operation.

**B. Braithwaite's Return to in RHU**

Braithwaite's first couple of months in general population were unremarkable, but on March 9, 2017, he was involved in a fight with two other inmates while playing basketball. As a result, Braithwaite received a conduct report and was moved to RHU. That same day, Braithwaite received another conduct report after officers searched his cell and found contraband, including a broken coax cable with a pencil taped on it. Braithwaite did not dispute his involvement in the March 9 fight, and he received 120 days in disciplinary separation in RHU. On June 1, 2017, still in RHU, Braithwaite received another conduct report for attempting to pass razor blades to an inmate. He received *another* 120 days disciplinary separation in RHU, pushing his anticipated RHU release date to October 1, 2017.

On September 22, 2017, about a week before Braithwaite was due to be released from RHU, Captain Van Lanen submitted a recommendation that Braithwaite be held in administrative confinement after his release from disciplinary separation. Van Lanen recommended Braithwaite for administrative confinement based on his violent history in and out of prison, including his assault of a correctional officer at Waupun and his recent fight with two inmates. In addition, Van Lanen believed that Braithwaite had displayed poor institutional adjustment, had unmet treatment needs, and his pattern of misconduct during confinement presented elevated risks to the safety and bodily security of staff and other inmates alike. Security Director Kind approved Van Lanen's recommendation and initiated an administrative confinement hearing. Neither defendant Kind nor defendant Van Lanen were on the administrative confinement hearing committee, nor were they involved in the decision-making process. They also played no role in choosing the members of that committee.

The hearing was held on September 28, 2017, after which the administrative confinement hearing committee determined that administrative confinement of Braithwaite was unnecessary. On September 29, Security Director Kind was copied on an email from GBCI's office operations assistant, instructing the appropriate staff to move Braithwaite from RHU to the general population on October 1, when his disciplinary separation time would be completed. Kind responded, asking for an update on Braithwaite's administrative confinement status, after which the assistant informed Kind that the committee had come to a unanimous decision that administrative confinement was unnecessary. Kind responded that the warden needed to make a final determination whether Braithwaite should be placed in administrative confinement, and that until the warden had reviewed the committee's decision, it was not a

final determination.[1] In light of Kind's direction, staff were then told disregard the operation assistant's previous email instructing that Braithwaite be moved from RHU to general population. Instead, Braithwaite was moved to temporary lockup status on October 1, apparently pending review of the administrative confinement determination by the warden.

On October 2, 2017, after hearing that he was being placed in temporary lockup, Braithwaite cut his arm with a razor. At the direction of psychological services staff, Captain Van Lanen put Braithwaite on clinical observation. The following day, the warden informed Kind that he had affirmed the administrative confinement committee's recommendation *not* to place Braithwaite on administrative confinement. Kind then notified the appropriate staff that Braithwaite should be moved to general population once a mental health professional determined he could be removed from observation status. Braithwaite was moved to general population later that day.

**C. Braithwaite's Transfer to WSPF**

On October 5, 2017, just two days after Braithwaite had been released from RHU to general population, Captain Ryan Baumann, a security supervisor at GBCI, referred him for a mental health screening for potential transfer to WSPF.[2] Defendant Kind was notified about

---

[1] Defendant Kind was apparently incorrect in thinking that the warden must make a final determination regarding administrative confinement under the circumstances. Under the application regulations, the warden only reviews the decision of the administrative confinement review committee if the committee's decision is *not* unanimous. *See* Wis. Admin. Code § DOC 308.04(8)(c). Because the decision here was unanimous, the warden was not required to review it before the committee's decision was to be considered final.

[2] Defendants do not explain specifically what prompted Baumann to refer Braithwaite for the mental health screening, though emails exchanged between various security staff at different prisons show that WSPF staff were discussing several potential inmate exchanges and transfers in October

Baumann's referral. Several months before, in April 2017, the WSPF security director had suggested to Kind that Braithwaite be sent to WSPF in exchange for another inmate there who needed to be moved out. (Dkt. #47-5, at 1.)[3]

Under DOC policy, no inmates with serious mental illness may be transferred to WSPF. Thus, any inmate considered for transfer to WSPF must undergo a mental health screening process. The first step in the process is to review the individual's mental health designation codes (also known as an "MH code"). MH codes are assigned as part of the assignment and evaluation process at Dodge Correctional Institution, DOC's standard intake facility. This code identifies whether the offender has a need for mental health services while incarcerated. Psychological services staff periodically review inmates' MH codes and may update or change them.

MH Codes range from MH-0 to MH-2B. MH-0 indicates that the inmate has no current mental health needs; MH-1 indicates the inmate is receiving mental health services but does not suffer from serious mental illness. MH-2A indicates the inmate has a current diagnosis that reflects serious mental illness, such as a psychotic disorder, major depression or bipolar disorder. And MH-2B indicates the inmate has a personality disorder that is severe, accompanied by significant functional impairment, and is subject to periodic decompensation, such as depression or suicidality.

Braithwaite's MH code on October 5, 2017, and since at least 2014, was MH-1,

---

and November 2017 for a variety of reasons. (Dkt. #64-5, at 141–45.)

[3] Based on emails and other evidence provided by the parties, such inmate exchanges appear to be a regular occurrence and are based on security needs, an inmate's poor institutional adjustment, and other factors such as capacity and staffing at the various DOC institutions. (Dkt. #64-5.)

meaning he was potentially eligible for transfer to WSPF. Because Braithwaite was being referred to WSPF's general population unit, however, his psychological services file had to be reviewed and approved by WSPF's PSU Supervisor before transfer. Dr. Scott Rubin-Asch, the WSPF PSU Supervisor at the time, completed this review on October 27, 2017, and determined that Braithwaite had an MH-1 code, did not struggle with serious mental illness or acute risk of suicide/self-harm, and was clinically appropriate for WSPF. Neither defendants Kind nor Van Lanen were involved in this mental health screening.

On November 16, 2017, Braithwaite had a reclassification hearing for a potential transfer to WSPF's general population. These hearings are held to determine if an inmate should be kept at his or her current institution and security level, or whether an adjustment would be appropriate. Braithwaite did not want to be transferred to WSPF, and both his GBCI psychologist and social worker supported his decision to be retained at GBCI. Specifically, his social worker explained to the reclassification hearing committee that Braithwaite appeared to be adjusting well in the general population at GBCI, and although he had received some conduct reports, his behavior was nowhere near as bad as it had been at Waupun Correctional Institution.

Despite the social worker's support and Braithwaite's own opposition, the reclassification hearing committee unanimously recommended placement at WSPF. The committee reasoned that although his institutional adjustment at GBCI appeared manageable, his assessed risk and needs could also be addressed at WSPF. In addition, Braithwaite had been approved for placement at WSPF by Dr. Rubin-Asch, and bed management resources between the two prisons favored his being transferred. On November 17, DOC's classification specialist approved Braithwaite's transfer to WSPF and noted the transfer was appropriate

considering the committee's comments, bed space issues and institutional management needs. Defendants Van Lanen and Kind played no part in Braithwaite's mental health screening or reclassification hearing.

On November 22, 2017, Braithwaite was transferred to WSPF's general population. He remained at WSPF through 2023. According to Braithwaite, the conditions of confinement in general population at WSPF were harsher than at GBCI, as he was more isolated and had less access to recreation, as well as afforded fewer psychological services.

OPINION

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the parties have filed cross-motions for summary judgment, the court must consider the burden of proof each party would bear on an issue at trial, then require the party with the burden to produce evidence on each issue to show that they have met their burden. If a party fails to provide evidence in support of an issue on which they have to burden of proof at trial, the court may enter summary judgment against that party. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

Plaintiff was granted leave to proceed on claims that defendants Kind and Van Lanen acted with deliberate indifference to his serious mental health needs in violation of the Eighth Amendment by: (1) keeping him in RHU longer than necessary despite the administrative confinement committee's decision that such confinement was unnecessary; and (2) transferring

him to WPSF despite his psychologist's and social worker's recommendations that he remain at GBCI.

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with "deliberate indifference" to "substantial risk of serious harm" to a prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). As applied here, the Eighth Amendment prohibits prison officials from acting with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on medical deliberate indifference claim, a prisoner must demonstrate objective and subjective elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent to that need. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). In this case, defendants seek summary judgment on both elements.[4]

First, the parties dispute whether plaintiff has presented evidence showing that he had a serious mental health need. Defendants point to plaintiff's MH-1 mental health code designation, as well as evaluations by WSPF psychological staff stating that plaintiff did not have a serious mental illness that precluded him from being housed at WSPF. For his part, plaintiff cannot dispute that his mental health status at least technically permitted transfer to WSPF. However, he argues that his history of numerous mental health problems made him ineligible, including severe and persistent depression, explosive disorder and adjustment disorder and self-harming behaviors.

[4] Defendants also seek summary judgment based on qualified immunity. However, because the evidence shows overwhelmingly that defendants are entitled to summary judgment on the merits, the court does not need to address their qualified immunity defense.

For purposes of resolving the parties' motions for summary judgment, the court need not resolve this dispute because plaintiff's claims fail on the second element. Specifically, although plaintiff's evidence shows that he may have suffered from mental health problems, there is *no* evidence that defendants Kind or Van Lanen acted with deliberate indifference to those problems or, indeed, was personally involved in any decision moving plaintiff to WSPF.

A defendant acts with deliberate indifference if the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). With respect to plaintiff being held in GBCI's RHU for two days after his conduct report dispositions lapsed, plaintiff has presented *no* evidence that either defendant acted *intentionally* to delay his release despite knowing that it would be detrimental to his mental health. Defendant Van Lanen was not involved at all in the decision to hold plaintiff for two additional days. As for Kind, the evidence shows that, at most, he made a mistake in thinking that the warden had to sign off on the administrative confinement committee's decision to release plaintiff to GBCI's general population. But inadvertent error, negligence or even gross negligence are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Moreover, as soon as Kind heard from the warden, plaintiff *was* released to general population. There is no evidence suggesting that Kind believed that an additional two days would be detrimental to plaintiff's serious mental health needs.

Similarly, regarding plaintiff's transfer to WSPF, neither defendant was personally involved in the decision to approve plaintiff's transfer. Specifically, Van Lanen was not involved in the decision-making at all, and Kind was involved only to the extent that he knew

the potential transfer had been proposed by WSPF staff and later initiated by GBCI security staff. Importantly, Kind was not personally involved in evaluating plaintiff's mental health or security status for the transfer. Rather, that determination was left to the reclassification hearing committee and psychological services staff. Moreover, plaintiff has presented no evidence suggesting that either defendant believed or had reason to believe that a transfer would be detrimental to plaintiff's mental health needs. Neither defendant is a mental health professional, and DOC has policies and procedures in place assigning the responsibility to determine whether placement at WSPF was appropriate, which is what ultimately occurred here. In particular, although plaintiff's psychologist and social worker recommended that he remain at GBCI, both the reclassification committee and psychological services staff at WSPF determined that plaintiff's mental health needs could be met at WSPF. Moreover, defendants, to the extent they played any earlier role at all in a possible transfer, were entitled to defer to those decisions. *See Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019).

ORDER

IT IS ORDERED that:

1. Plaintiff Joshua Braithwaite's motion for summary judgment (dkt. #37) is DENIED.

2. Defendants John Kind and Captain Jay Van Lanen's motion for summary judgment (dkt. #43) is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered October 18, 2024.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge